UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE DAVID BUDZINSKI,                         Case No. 11-10018

             Plaintiff,                  David M. Lawson
vs.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge

             Defendant.

_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 12)

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On January 3, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge David M. Lawson referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 9, 12).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 17, 2007, alleging that he became

unable to work on May 30, 1987.  (Dkt. 5-5, Pg ID 115).  The claim was initially

disapproved by the Commissioner on October 9, 2007.  (Dkt. 5-4, Pg ID 78-82).

Plaintiff requested a hearing and on October 5, 2009, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Michael Wilenkin, who

considered the case *de novo*.  In a decision dated October 16, 2009, the ALJ found

that plaintiff was not disabled.  (Dkt. 5-2, Pg ID 48-56).  Plaintiff requested a

review of this decision on October 19, 2009.  (Dkt. 5-2, Pg ID 45-47).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 5-2, Pg ID 40-41), the Appeals Council, on October 29,

2010, denied plaintiff's request for review.  (Dkt. 5-2, Pg ID 37-39).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be remanded for

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

further proceedings before the Commissioner.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 51 years of age at the time of the most recent administrative hearing.  (Dkt. 5-2, Pg ID 22).  Plaintiff's relevant work history included approximately 8 years as a production line worker.  (Dkt. 5-6, Pg ID 132).  In denying plaintiff's claims, defendant Commissioner considered back pain as a possible basis of disability.  *Id.*

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since May 30, 1987.  (Dkt. 5-2, Pg ID 53).  At step two, the ALJ found that plaintiff's mechanical low back pain with non-surgical L4-L5 disc herniation was "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform his previous work as a manufacturing production line worker.  (Dkt. 5-2, Pg ID 55).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id.*

### B.     Plaintiff's Claims of Error

According to plaintiff, the ALJ erred in using Medical-Vocational Rule

202.17 to deny him Social Security disability benefits.  (Tr. 38).   The ALJ

concluded "[t]hrough the date last insured, if [plaintiff] had the [RFC] to

perform the full range of light work, considering [his] age, education, and work

experience, a finding of 'not disabled' would be directed by Medical-Vocational

Rule 202.17.  However, the additional limitations had little or no effect on the

occupational base of unskilled light work.  A finding of 'not disabled' is therefore

appropriate under the framework of this rule."  (Tr. 38).  Plaintiff argues that the

ALJ found that he had nonexertional limitations and therefore, "the rules in

appendix 2 do not direct factual conclusions of disabled or not disabled" and the

ALJ erred as a matter of law by using the Medical-Vocational Guidelines when

denying plaintiff's claim.  Notably, there was no VE present at the hearing in this

case.

The ALJ opined in the denial that Dr. Sperl restricted plaintiff "to limited

bending and twisting and lifting no more than 25 pounds.  With the exception of

one passing reference to a so-called sit/stand option, Dr. Sperl noted no other

deficit in [Mr. Budzinski's] ability to perform all of the usual and customary

physical aspects of sustained competitive employment (Ex. 3F)."  (Tr. 37).

According to plaintiff, the only discussion by the ALJ regarding the long-standing

treating doctor's notes and opinions is "as for the opinion evidence, Dr. Sperl's

unchallenged opinions from December 1993 to November 1997 are controlling.

Any opinions to the contrary authored one decade later are accorded no substantive weight." (Tr. 37). Plaintiff argues that the ALJ failed to give good reasons for not giving controlling weight to Dr. Sperl's 2007 opinion and committed an error of law by utilizing Medical Vocational Guidelines 202.17 to direct the conclusion that plaintiff was not disabled.

    C.   <u>Commissioner's Motion for Summary Judgment</u>

The Commissioner points out that there was no evidence in the record from the time frame before plaintiff lost his insured status. However, the ALJ still considered the evidence after that date. (Tr. 37). The Commissioner acknowledges that evidence created after a claimant's date last insured is relevant to the extent that it sheds light on the claimant's condition while he was insured. Adhering to this principal, the Commissioner asserts that the ALJ reasonably found that the fact that the medical evidence pertained to the period after September 30, 1993, decreased in probative value and noted that this was particularly true with respect to the most recent evidence, created a decade later. (Tr. 37).

Based on the medical evidence, the ALJ found that plaintiff's mechanical low back pain with non-surgical L4-5 disc herniation was a severe impairment. The ALJ then discussed the medical evidence post-dating plaintiff's date last insured, including several opinions from Dr. Sperl, plaintiff's treating physician.

(Tr. 37).  The ALJ assigned controlling weight to Dr. Sperl's opinions between December 1993 and November 1997.  (Tr. 37, 236, 241, 255, 265, 267).  The ALJ stated that Dr. Sperl opined that plaintiff was restricted to limited bending and twisting and lifting no more than 25 pounds.  (Tr. 37).  The ALJ noted that Dr. Sperl opined that plaintiff needed the option to sit or stand, but apparently rejected that limitation because the ALJ referred to it as "one passing reference."  (Tr. 37). Indeed, Dr. Sperl did not include that limitation in four out of the five opinions issued between 1993 and 1997.  (Tr. 236, 241, 255, 265).  The ALJ found that plaintiff had the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b) except See Dr. Sperl."  (Tr. 36).  Light work requires: lifting no more than 20 pounds at a time; frequently lifting and carrying no more than 10 pounds; and a significant amount of walking or standing, or when it involves sitting most of the time, with some pushing or pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).  Therefore, the ALJ limited plaintiff to light work with limited bending and twisting.

The ALJ found that plaintiff's past work in manufacturing exceeded his RFC.  (Tr. 38).  The ALJ then noted that plaintiff was 35 years old on his date last insured, had a limited education, and performed only unskilled work.  (Tr. 38). The ALJ stated that if plaintiff could perform a full range of light work, he would be found not disabled under Rule 202.17, found in the Medical-Vocational

Guidelines (aka "the Grid").  (Tr. 38).  The Commissioner acknowledges that the Grid is only used after a determination that a claimant is not performing substantial gainful activity and cannot perform his past relevant work.  *Id*.  The ALJ found that plaintiff's additional restrictions had little or no effect on the occupational base, and found plaintiff not disabled under the framework of the Grid rule.  (Tr. 38).  Thus, the Commissioner asserts that the ALJ properly used the Grid as a framework and that substantial evidence supports the ALJ's finding that plaintiff was not disabled.

While plaintiff argues that the ALJ did not properly consider opinions and treatment notes from Dr. Sperl, the ALJ contends that plaintiff does not identify which treatment notes he thinks the ALJ overlooked or which opinion he believes the ALJ should have adopted.  However, because the ALJ assigned controlling weight to Dr. Sperl's opinions from December 1993 to November 1997, the Commissioner acknowledges that plaintiff is presumably arguing that the ALJ should have adopted Dr. Sperl's opinions from 2007.  According to the Commissioner, the ALJ reasonably found that Dr. Sperl's 2007 opinions were of limited value.  (Tr. 37).  Substantial evidence supports the ALJ's finding that Dr. Sperl's opinions between December 1993 to November 1997 were entitled to controlling weight.  (Tr. 37).  Consistent with the principle that evidence after the date last insured is relevant only to the extent that it is probative of  the claimant's

condition prior to that date, the ALJ stated that the fact that all of the medical evidence post-dated plaintiff's date last insured, September 30, 1993, limited its probative value. (Tr. 37). The ALJ noted that this was particularly true of the evidence that post-dated plaintiff's earlier treatment by almost ten years. (Tr. 37). Indeed, the opinions that plaintiff believes that the ALJ should have adopted were written more than 13 years after plaintiff's date last insured. (Tr. 224, 226, 228). According to the Commissioner, plaintiff fails to explain why the ALJ should have adopted the limitations contained in Dr. Sperl's opinions from 2007, instead of those much closer in time to plaintiff's date last insured. Dr. Sperl apparently knew nothing in 2007 about plaintiff's condition as of the date last insured that he did not know between 1993 and 1997. The Commissioner contends that plaintiff has therefore failed to demonstrate that the ALJ erred in rejected Dr. Sperl's opinions from 2007. (Tr. 37).

As to plaintiff's Grid argument, the Commissioner asserts that plaintiff misreads the ALJ's decision. The ALJ did not directly apply the Grid to find plaintiff not disabled. Rather, according to the Commissioner, consistent with the applicable Agency guidance, the ALJ found that plaintiff's nonexertional impairments had little or no effect on the unskilled light occupational base and applied the Grid as a framework in finding him not disabled. (Tr. 38). The Commissioner explains that when a claimant has only exertional limitations, the

rules in the Grid are directly applied to determine whether or not the claimant is

disabled.  However, when an ALJ finds that a claimant has both exertional and

nonexertional impairments, the Grid rules are not directly applied unless a rule

directs that the claimant is disabled based on his exertional limitations.  20 C.F.R.

§ 404.1569a(d); Social Security Ruling 83-14, 1983 WL 31254 (1983).

In this case, the ALJ essentially found that plaintiff could perform light

work with limited bending and twisting.  (Tr. 36-37).  The ALJ then noted that if

plaintiff had the RFC to perform the full range of light work, Grid Rule 202.17

would direct a finding of not disabled.  (Tr. 38).  However, the ALJ then

appropriately found, according to the Commissioner, that the additional limitations

had little or no effect on the occupational base of unskilled light work.  (Tr. 38).

He concluded that "[a] finding of 'not disabled' is therefore appropriate under the

framework of this rule."  (Tr. 38).  The Commissioner maintains that the ALJ's

finding is consistent with Agency guidance in SSR 83-14.  SSR 83-14 explains

how the Agency will use the Grid as a framework for evaluating a combination of

exertional and nonexertional impairments.  It states that when a claimant cannot be

found disabled based on strength limitations alone, the rule which corresponds to

the claimant's vocational profile and maximum exertional ability will be the

starting point to evaluate what the person can still do functionally and how the

claimant's limitations taken together reduce the base of unskilled sedentary, light,

or medium jobs. *Id* at *3. The Ruling explains that in reaching judgments as to the sufficiency of the remaining exertional job base, there are three possible situations. *Id* at *6. One is that "[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected." *Id*. Social Security Ruling 83-14 discusses the vocational impact of limitations on a claimant's ability to move his spine. It states that two types of bending must be done frequently in most medium, heavy, and very heavy jobs. *Id*. at *2. They are stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and the spine). *Id*. The Ruling explains that, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time). *Id*. Based on this guidance, it was reasonable for the ALJ to conclude that a restriction on spine movement such that a person was limited, but capable, of bending and twisting would have little or no effect on the occupational base. (Tr. 38). Thus, the Commissioner contends that substantial evidence supports the ALJ's finding that plaintiff was not disabled using the Grid as a framework.

## III.  DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

This analysis begins with explaining the difference between exertional and nonexertional limitations.  SSR 85-15[2] describes nonexertional limitations as follows:

> Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch). Fine movements of small objects, such as done in much sedentary work and in certain types of more demanding work (e.g., surgery), require use of the fingers to pick, pinch, etc. Impairments of vision, speech, and hearing are nonexertional. Mental impairments are generally considered to be nonexertional, but depressions and conversion disorders may limit exertion. Although some impairments may cause both exertional limitations and environmental restrictions (e.g., a respiratory impairment may limit a person to light work exertion as well as contraindicate exposure to excessive dust or fumes), other impairments may result in only environmental restrictions (e.g., skin allergies may only contraindicate contact with certain liquids). What is a nonexertional and extremely rare factor in one range of work (e.g., crawling in sedentary work) may become an important element in arduous work like coal mining.

In contrast, exertional limitations are described in SSR 83-10, which defines the

_____

[2] SSR 85-15 does not apply to the present because it only applies to claimants who have solely nonexertional limitations, and does not apply to claimants with exertional and nonexertional limitations. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).  However, the undersigned is merely using it to illustrate the difference between the two categories.

term "exertional activity" as "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work."  SSR 83-10.  Thus, an "exertional impairment" is defined as "[a]n impairment-caused limitation which affects capability to perform an exertional activity."  *Id*.

In this case, the ALJ found that plaintiff had an exertional limitation (no lifting greater than 20 pounds) and the nonexertional limitations of "limited twisting and bending."  Under such circumstances, SSR 83-14 is applicable.  As the Commissioner points out, SSR 83-14 provides that "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)."  Therefore, when a claimant is precluded from crouching (bending the body downward and forward by bending both the legs and the spine) and limited to occasional stooping (bending the body downward and forward by bending the spine at the waist) would not substantially erode the unskilled occupational base for either sedentary or light work.  SSR 83-14.  Under such circumstances, SSR 83-14 may constitute substantial evidence to support an ALJ's decision that there is a sufficient occupational base.  *See* SSR 83-14 ("[w]here it is clear that the additional limitation or restriction has very little effect on the exertional occupational base,

the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected."). However, in this case, nothing in SSR 83-14 accounts for plaintiff's limitation on twisting. As several courts have explained, if the agency ruling is silent on the nonexertional limitation at issue, the decision maker will need to obtain the assistance of a vocational expert or other expert guidance, rather than relying on the ruling alone. *See e.g.*, *Hammons v. Astrue*, 2010 WL 58913 (E.D. Ky. 2010) (In reviewing light work RFC, case remanded for further findings because SSR 83-14 did not address claimant's need to avoid concentrated exposure to temperature extremes and workplace hazards); *Short v. Astrue*, 2010 WL 2305536 (E.D. Ky. 2010) (SSR 96-9p, which applies to sedentary work, did not address a limitation on twisting, and thus the ALJ was required to consult authoritative written sources or obtain the testimony of a vocational expert on remand.).

In this case, even giving the ALJ's analysis the benefit of the doubt[3] that it otherwise complied with SSR 83-14, the ALJ simply did not expressly address how his finding that plaintiff had a limited ability to twist affected the occupational base for light work. Under the circumstances, this matter will require, on remand, the taking of further vocational evidence on this issue.

---

[3] The ALJ's analysis is remarkably similar to that found inadequate in *Hammons*, *supra*.

As to plaintiff's claim that the ALJ failed to give Dr. Sperl's later opinions controlling weight or failed to give good reasons for rejecting this opinion, the undersigned is not persuaded that the ALJ erred. The Sixth Circuit has upheld the decision of an ALJ to give less than controlling weight to a treating physician opinion that was not issued contemporaneously with treatment. *Infantado v. Astrue*, 263 Fed.Appx. 469 (6th Cir. 2008) (The failure to explicitly reference the regulation factors was not grounds for reversal because it was not an impediment to meaningful review on appeal, where the ALJ concluding that treating physician opinion was without foundation, given that the treating physician was did not start treating the plaintiff until 2.5 years after the relevant period.); *Butcher v. Sec'y of Health and Hum. Serv.*, 1994 WL 589504 (6th Cir. 1994) (Treating physician opinion rendered 2.5 years after the relevant period and which contradicted the contemporaneous evidence was appropriately not given controlling weight). Moreover, as the ALJ gave controlling weight to the records of Dr. Sperl that were far closer in time to plaintiff's last date insured, the ALJ certainly did not summarily dismiss his opinions. *See e.g.*, *Owens v. Astrue*, 2011 WL 4337008 (N.D. Ohio 2011). In the absence of some authority to the contrary, (and plaintiff has offered none), in the view of the undersigned, the ALJ's analysis of the treating physician evidence was reasonable and supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be remanded for further proceedings before the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

                                                    s/Michael Hluchaniuk_____
Date:  March 1, 2012                                Michael Hluchaniuk
                                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on March 1, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Willilam L. Woodard, AUSA, and the Commissioner of Social Security.

                                                    s/Darlene Chubb_____
                                                    Judicial Assistant
                                                    (810) 341-7850
                                                    darlene_chubb@mied.uscourts.gov